UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| YOHAN BIC FLAME-BEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cv-04153-JRS-MJD |
| ) | |
| REWERTS, et al. ) | |
| ) | |
| Defendants. ) | |

**Order Granting Motions for Summary Judgment and Directing Entry of Final Judgment**

Plaintiff Yohan Bic Flame-Bey, an Indiana inmate, filed this lawsuit pursuant to 42 U.S.C. § 1983. Mr. Flame-Bey alleges that, in September of 2019, when he alerted prison officials of his belief that he had been poisoned with battery acid, defendant Nurse Pryor told other medical personnel not to treat him because he had been filing grievances. He also alleges that, shortly thereafter, defendant Jennifer Rewerts[1] placed him in a strip cell and defendant Jerry Gilley denied him adequate conditions of confinement. Mr. Flame-Bey claims that the defendants' actions violated his Eighth Amendment rights and were coordinated to retaliate against him in violation of his First Amendment rights. The defendants have moved for summary judgment, and Mr. Flame-Bey has not responded. For the following reasons, the defendants' motions for summary judgment are granted.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

---

[1] Mr. Flame-Bey spelled this defendant's name "Rewearts" in the complaint, but her filings indicate that her name is properly spelled "Rewerts."

as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Court is not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Indiana Univ.,* 870 F.3d 562, 572-73 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Mr. Flame-Bey failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are deemed admitted so long as support for them exists in the record. *See* S.D. Ind. Local Rule 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"). This does not alter the summary judgment standard, but it does "[r]educe[] the

pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

## II. Undisputed Facts

The following statement of facts has been evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but the undisputed facts are presented in the light most favorable to Mr. Flame-Bey as the non-moving party. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

### A. The Parties

At all times relevant to the complaint, Mr. Flame-Bey was housed at Pendleton Correctional Facility ("PCF"). Dkt. 62-1 (Flame-Bey Dep. at 20:21-24).

Nurse Pryor is employed as a registered nurse at PCF. Dkt. 62-2 (Pryor Aff. ¶ 2).

Ms. Rewerts is a licensed mental health professional at PCF. Dkt. 62-3 (Rewerts Aff. ¶ 2). As a mental health professional, Ms. Rewerts has access to Mr. Flame-Bey's medical and mental health records, including request for healthcare forms. *Id.* ¶ 23. Occasionally, as part of Ms. Rewerts' job, she receives requests from the health service administrator, medical providers, or nursing staff to perform a mental health evaluation of a patient. *Id.* at ¶ 24. In these cases, she might receive background information on why the referral is being requested, including healthcare request forms. *Id.*

At all relevant times, Captain Gilley was employed at PCF as a Correctional Captain. Dkt. 49-3 (Gilley Aff. ¶ 3). Captain Gilley is not a medical professional. Dkt. 49-2 ¶ 12.

### B. Mr. Flame-Bey's Medical Care

On Thursday, September 26, 2019, Mr. Flame-Bey submitted two requests for healthcare concerning his belief that a parasite was traveling through his body and that he had been poisoned

3

with battery acid. Dkt. 62-3 p. 134-35. Ms. Rewerts was asked to see Mr. Flame-Bey in the medical unit because he told custody staff he would commit suicide if he was not seen by medical. Dkt. 62-3 (Rewerts Aff. ¶ 9); dkt. 62-3 p. 57-59. When Ms. Rewerts went to medical to see Mr. Flame-Bey, he was not there, and Nurse Pryor told her that Mr. Flame-Bey had not been there that day. *Id.* Ms. Rewerts was given copies of the healthcare requests. *Id.*

When Ms. Rewerts located Mr. Flame-Bey, he stated, among other things, that an officer threatened him earlier that year, that Nurses Davis and Pryor refused to see him, that he had a life-threatening emergency, and he needed a poison control specialist. *Id.* When Ms. Rewerts asked him if he was having suicidal thoughts, he stated, "no, not at all" and that he never told anyone that he was having suicidal thoughts. *Id.* Ms. Rewerts observed that Mr. Flame-Bey's appearance was unkempt, he was anxious, his speech was pressured, and his thought process was racing. *Id.* He also exhibited paranoid thought content with ideas of persecution. *Id.* He blamed others for his problems. *Id.* Her assessment was that Mr. Flame-Bey's anxiety and psychotic symptoms were significant and worsened. *Id.*

Based on her evaluation, Ms. Rewerts decided to place Mr. Flame-Bey on safety precautions in a stripped cell in restrictive housing to be evaluated by a psychiatrist for possible psychosis. *Id.* He was to be allowed a suicide blanket, mattress, and suicide smock. *Id.*; *see also* dkt. 62-3 p. 136. He was to have no food utensils or personal belongings. *Id.* He was to be allowed monitored showering and unmonitored toileting. *Id.* These restrictions were imposed to protect him from potentially harming himself. Dkt. 62-3 (Rewerts Aff. ¶ 20). In addition, at least one light was kept on in the cell so custody staff and inmates working as suicide companions could ensure that Mr. Flame-Bey did not harm himself. *Id.* Ms. Rewerts testifies that it is appropriate, reasonable, and within the standard of care to place a patient in a stripped cell, in a suicide smock,

if they are believed to be a danger to themselves or suffering from psychosis. *Id.* (Rewerts Aff. ¶ 21). Ms. Rewerts is not aware if Mr. Flame-Bey was given showers or soap to wash his hands, as these conditions are controlled by custody staff. *Id.* (Rewerts Aff. ¶ 22).

Later that day, Captain Gilley reviewed and signed a Restrictive Status Housing Report ("Report"), which listed the reasons for the placement and restrictions. Dkt. 49-2 p. 4. Other custody staff prepared the Report at the request of medical staff. Dkt. 49-3 ¶ 9. While the Report lists the directing medical provider as Dr. Liedtke, *id.*, it should have listed Ms. Rewerts. Dkt. 49-2 ¶ 9-14. Captain Gilley reviewed the Report and noted that medical staff had requested the housing move for Mr. Flame-Bey. Dkt. 49-3 ¶ 11. In such a circumstance, Captain Gilley relies on the judgment of medical professionals. *Id.* ¶ 13.

Dr. Scott Levine saw Mr. Flame-Bey the following day, September 27, 2019, to discuss psychotropic medications. Dkt. 62-3 (Rewerts Aff. ¶ 10); dkt. 62-3 p. 63-66. Dr. Levine noted that Mr. Flame-Bey had been referred for complaints of difficulty with parasites and an officer threatening to put battery acid in his food. *Id.* Dr. Levine noted that Mr. Flame-Bey was unsure whether the officer had put battery acid in his food. *Id.*

Also on September 27, 2019, Ms. Rewerts evaluated Mr. Flame-Bey for his daily suicide monitoring visit. Dkt. 62-3 (Rewerts Aff. ¶ 11); dkt. 62-3 p. 60-62. He reported that he had seen the psychiatrist and was ready to go back to his cell. *Id.* He did not feel he was getting proper medical treatment and wanted to be sent out to the hospital for x-rays to make sure there were no parasites in his body. *Id.* He reported putting in healthcare requests, but they were being ignored. *Id.* She noted that his appearance was still unkempt, his thought process was racing with obsessional thought content, and he had delusions of persecution with only partial insight. *Id.* She

further noted that he could not be discharged from safety precautions until Monday morning so mental health would follow up with him on Monday for his daily suicide watch visit. *Id.*

That same day, a nurse completed an assessment of Mr. Flame-Bey while he was on safety precautions. Dkt. 62-2 (Pryor Aff. ¶ 19); dkt. 62-2 p. 71. He complained of feeling worms crawling in his blood, stomach, and arms and that there was arsenic in his food and no one believed him. *Id.* The nurse noted his anxiety was significant and unclear and that his report of symptoms appeared questionable. *Id.*

On Saturday, September 30, 2019, Ms. Rewerts evaluated Mr. Flame-Bey for his daily suicide watch visit. Dkt. 62-3 (Rewerts Aff. ¶ 12); dkt. 62-3 p. 73-75. He reported he saw the psychiatrist and was possibly put on medication and he was ready to go back to his cell. *Id.* Ms. Rewerts noted that his appearance was generally normal, his thought process was logical, his mood was stable, and he denied hallucinations. *Id.* The plan was to release him from suicide watch and follow up with him in 24 hours. *Id.* Custody and nursing staff were notified that safety precautions had been discontinued. *Id.*

On Sunday October 1, 2019, Ms. Rewerts met with Mr. Flame-Bey for his 24-hour post-suicide watch follow-up. Dkt. 62-3 (Rewerts Aff. ¶ 12); dkt. 62-3 p. 89-90. His mental status was unremarkable with a stable mood, logical thought process, and no hallucinations or delusions evidenced. *Id.* She noted that mental health would continue with the post-release protocol. *Id.*

### III. Discussion

Mr. Flame-Bey alleges in the complaint that Nurse Pryor violated his Eighth and First Amendment rights by telling other medical personnel not to treat him because he had been filing

grievances on medical staff. He further alleges that Ms. Rewerts and Captain Gilley had him placed in a strip cell in violation of his Eighth Amendment rights and in retaliation for filing grievances.[2]

### A. Eighth Amendment Claims

"To determine if the Eighth Amendment has been violated in the prison medical context, [courts] perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc). Similarly, in considering Eighth Amendment claims based on conditions of confinement, the plaintiff must show: "first…that the conditions are sufficiently serious—*i.e.*, that they deny the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety—and second, a subjective showing of a defendant's culpable state of mind." *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017) (internal citations and quotation omitted). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotation omitted).

---

[2] Mr. Flame-Bey also asserts in his complaint that he was denied the right to practice his religion while in the strip cell. But Mr. Flame-Bey did not assert a claim based on this alleged denial in the "Claims for Relief" section of his complaint, dkt. 2, p. 6. Thus, the Court did not identify such a clam in its screening Order, dkt. 9. And Mr. Flame-Bey was given the opportunity to point out any claims not identified in the screening order, dkt. 9, p. 2-3, but did not do so. Accordingly, no freedom of religion claim is proceeding in this case.

### 1. Nurse Pryor

Mr. Flame-Bey alleges that Nurse Pryor was deliberately indifferent to his serious medical needs by failing to evaluate or treat him for his complaint that he believed he had ingested battery acid and by telling other medical personnel not to treat him. Mr. Flame-Bey also alleges that Nurse Pryor improperly gave Ms. Rewerts his healthcare request forms.

Nurse Pryor argues that Mr. Flame-Bey cannot show that his suspected poisoning with battery acid amounts to a serious medical need. "An objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). She contends that Mr. Flame-Bey's belief that he ingested battery acid does not amount to a serious medical need because no doctor has diagnosed him as having done so and he has been diagnosed with a delusional disorder. Further, Nurse Pryor states that she would never instruct another nurse or medical provider to deny an inmate medical care because he had filed grievances. Dkt. 62-2 (Pryor Aff. ¶ 37). Finally, to the extent Mr. Flame-Bey claims that Nurse Pryor gave Ms. Rewerts his healthcare request forms, Nurse Pryor does not specifically remember doing so, but it is possible she did if a mental health referral needed to be made. Dkt. 62-1 (Pryor Aff. ¶ 39). Mental health professionals are part of the medical staff and therefore have access to and can be shown medical records and mental health records from any inmate. *Id.* ¶ 42.

Having failed to respond to the motion for summary judgment, Mr. Flame-Bey has failed to point to evidence that he ingested battery acid, that Nurse Pryor directed others not to treat him, or that she provided Ms. Rewerts his medical records improperly. Nurse Pryor is therefore entitled to summary judgment on his Eighth Amendment claim.

### 2. Ms. Rewerts

Mr. Flame-Bey alleges that Ms. Rewerts subjected him to unconstitutional conditions of confinement by having him placed on suicide watch in a strip cell. Mr. Flame-Bey alleges that after this placement, he was stripped naked, kept in constant light, and not allowed to wash his hands or shower. Dkt. 2. He also alleges that he was denied recreation, commissary, telephone privileges, letters, and practicing his religion. *Id.* Ms. Rewerts argues that Mr. Flame-Bey's placement on suicide watch was appropriate, that the restrictions were necessary safety precautions, and that she was not responsible for any denial of hand washing or showering.

Ms. Rewerts saw Mr. Flame-Bey after he submitted healthcare requests claiming that he was infested with parasites and had battery acid poured in his food. Dkt. 62-3 (Rewerts Aff. ¶ 9). Although Mr. Flame-Bey denied being suicidal, his general appearance was unkempt, his mood was anxious, he had pressured speech, his thought process was racing, and he appeared to be paranoid. *Id.* Because of his significant and worsening psychotic symptoms and anxiety, Ms. Rewerts decided to place him on safety precautions to have him evaluated by a psychiatrist for psychosis. *Id.* She therefore ordered that Mr. Flame-Bey be placed in a cell without his belongings, dressed in a suicide smock, and given a mattress and suicide blanket. *Id*. He was also to have monitored showering, unmonitored toileting, and no food utensils. *Id.* Ms. Rewerts explains that such orders are reasonable if a treatment provider suspects an inmate is suffering from psychosis because common items such as pens, clothes, and blankets can be used by someone to harm themselves. *Id.* (Rewerts Aff. ¶¶ 21, 22).

Ms. Rewerts has presented evidence that she believed Mr. Flame-Bey needed to be placed on suicide watch for his protection and that the conditions he experienced – including the denial of his property, the suicide smock and mattress, and constant light – were necessary to ensure that

protection. She has therefore shown that she did not act with a culpable state of mind by placing him on suicide watch. By failing to respond to the motion for summary judgment, Mr. Flame-Bey has failed to present evidence that she had a culpable state of mind.

To the extent that Mr. Flame-Bey asserts that he was not permitted to wash his hands or shower, Mr. Rewerts explains that she entered orders for monitored showering and unmonitored toileting and that custody staff were responsible for implementing those orders. *Id.* (Rewerts Aff. ¶ 22). Because Mr. Flame-Bey did not respond to the motion for summary judgment, it is undisputed that Mr. Rewerts was not responsible for any denials of handwashing or showering. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted) ("[I]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation.").

Ms. Rewerts is therefore entitled to summary judgment on Mr. Flame-Bey's Eighth Amendment claim.

### 3. Captain Gilley

Mr. Flame-Bey alleges that Captain Gilley violated his Eighth Amendment rights by authorizing his housing placement. Captain Gilley points out that the only action he took was signing the Restrictive Status Housing Report and argues that, in doing so, he reasonably relied on the determination of medical professionals that Mr. Flame-Bey needed to be placed on suicide watch. Captain Gilley further argues that there is no evidence that he knew of any alleged wrongdoing in Mr. Flame-Bey's placement or had any reason to doubt the propriety of that placement.

Because Mr. Flame-Bey did not respond to the motion for summary judgment, there is no dispute that Captain Gilley merely signed the Restrictive Housing Report in reliance on Ms.

10

Rewert's determination that Mr. Flame-Bey should be put on suicide watch. "[I]f a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (citing *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). Further, there is no evidence that Captain Gilley was aware of, or responsible for, the conditions Mr. Flame-Bey experienced while on suicide watch. Captain Gilley is therefore entitled to summary judgment on Mr. Flame-Bey's Eighth Amendment claims.

### B. Retaliation

To prevail on his First Amendment retaliation claim, Mr. Flame-Bey must show that "(1) []he engaged in activity protected by the First Amendment; (2) []he suffered a deprivation that would likely deter First Amendment activity; and (3) the protected activity []he engaged in was at least a motivating factor for the retaliatory action." *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017) (internal citations omitted).

#### 1. Nurse Pryor

Mr. Flame-Bey alleges that Nurse Pryor retaliated against him by telling other medical personnel not to treat him because he had been filing grievances against medical staff. Nurse Pryor has testified that she does not remember knowing on September 20, 2019, when Mr. Flame-Bey alleges she told other personnel not to treat him, that he had filed grievances against her. Dkt. 62-2 (Pryor Aff. ¶ 38). She also states that she would never instruct another nurse or medical provider to deny an inmate medical care because he had filed grievances. *Id.* Having failed to respond to the motion for summary judgment, Mr. Flame-Bey has failed to dispute this evidence. There is therefore no evidence that Nurse Pryor took any adverse action against Mr. Flame-Bey because he filed grievances and therefore no evidence of the second element of a retaliation claim – that he

11

suffered a deprivation that would likely deter First Amendment activity. Nurse Pryor is therefore entitled to summary judgment on this claim.

### 2. Ms. Rewerts

Mr. Flame-Bey claims that Ms. Rewerts retaliated against him for filing grievances by putting him on suicide watch when he was not suicidal. Ms. Rewerts has presented evidence that she placed him on safety precautions to have him evaluated for possible psychosis, which can cause increased suicidal thoughts and actions. Dkt. 62-3 (Rewerts Aff. ¶¶ 21, 22).

To prove his First Amendment retaliation claim, Mr. Flame-Bey must show that his protected activity was a motivating factor behind the retaliatory action. Even if Mr. Flame-Bey could show a connection between his grievances and Ms. Rewerts' decision to place him on suicide watch, "[t]he burden then shifts to [Ms. Rewerts] to show that [she] would have taken the action despite the bad motive." *Mays v. Springborn*, 719 F.3d 631, 635 (7th Cir. 2013) (citation omitted). "[T]he ultimate question is whether events would have transpired differently absent the retaliatory motive." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). As discussed above, Ms. Rewerts has shown that she placed Mr. Flame-Bey on suicide watch because he was exhibiting signs of paranoia and psychosis and that such symptoms could lead someone to attempt to harm themselves. Ms. Rewerts therefore has established a non-retaliatory reason for her actions, and Mr. Flame-Bey has failed to rebut this reason. Ms. Rewerts is therefore entitled to summary judgment on Mr. Flame-Bey's retaliation claim.

### 3. Captain Gilley

Mr. Flame-Bey alleges that Captain Gilley approved his placement on suicide watch in retaliation for his filing of grievances. Captain Gilley argues, among other things, that Mr. Flame-Bey cannot show that his protected activities were a motivating factor in his actions. Captain Gilley

explains that he signed the Restrictive Housing Report based on his reliance on Mr. Rewert's conclusion that Mr. Flame-Bey needed to be placed on suicide watch. Dkt. 49-3 ¶ 11-13. Captain Gilley therefore has established a non-retaliatory reason for his actions, and Mr. Flame-Bey has failed to rebut it. Captain Gilley is therefore entitled to summary judgment on Mr. Flame-Bey's retaliation claim.

### IV. Conclusion

For the foregoing reasons, the defendants' motions for summary judgment, dkt. [60], and dkt. [64], are **granted**. Judgment consistent with this Order and the Order of October 1, 2020, dismissing the claims against defendant Christine Liedtke, dkt. [54], shall now issue.

**IT IS SO ORDERED.**

Date: 5/25/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

YOHAN BIC FLAME-BEY
148865
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

All Electronically Registered Counsel